1  Jeffrey Cutler, CA Bar No. 100639
   Email: jcutler@wkpyc.com
2  Elizabeth Rosenfeld, CA Bar No. 106577
   Email: rosenfeld@wkpyc.com
3  Sally S. Frontman CA State Bar No. 227735
   E-Mail: sfrontman@wkpyc.com
4  **WOHLNER KAPLON PHILLIPS YOUNG & CUTLER**
5  A Professional Corporation
6  16501 Ventura Boulevard, Suite 304
   Encino, California 91436
7  Telephone: (818) 501-8030- #331
   Fax: (818) 501-5306

8  Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### (Western Division)

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SOUTHERN CALIFORNIA FLOOR COVERING PENSION TRUST FUND, SOUTHERN CALIFORNIA FLOOR COVERING HEALTH AND WELFARE TRUST FUND, SOUTHERN CALIFORNIA FLOOR COVERING APPRENTICESHIP AND TRAINING TRUST FUND, SOUTHERN CALIFORNIA FLOOR COVERING VACATION AND HOLIDAY TRUST FUND, CONTRACT ADMINISTRATION TRUST FUND, and THE PAINTERS AND ALLIED TRADES LABOR MANAGEMENT COOPERATION FUND, <br><br> Plaintiffs, <br><br> v. <br><br> LAMBARD ENTERPRISES, INC., a California corporation, and DOES 1 through 10, inclusive, <br><br> Defendant. | CASE NO. CV09-07652 GW(RZx) <br><br> Assigned to: <br> The Honorable George H. Wu <br> Courtroom: 10 <br><br> **POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION FOR AWARD OF ATTORNEYS' FEES IN EXCESS OF THE DEFAULT SCHEDULE IN L.R. 55-3** <br><br> [L.R. 55-3] <br><br> DATE: March 17, 2011 <br> TIME: 8:30 A.M. <br> CTRM: 10 <br> Location: 312 N. Spring Street <br> Los Angeles, CA 90012 <br><br> Complaint Filed: October 21, 2009 <br> Trial Date: Vacated |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs submit the following Memorandum of Points and Authorities in support of their Amended Motion for Attorneys' Fees in Excess of Schedule in L.R. 55-3.

## I. STATEMENT OF THE CASE

Plaintiffs, the Boards of Trustees of the Southern California Floor Covering Pension Trust Fund, Southern California Floor Covering Health and Welfare Trust Fund, Southern California Floor Covering Apprenticeship and Training Trust Fund, Southern California Floor Covering Vacation and Holiday Trust Fund, Contract Administration Trust Fund, Painters and Allied Trades Labor Management Cooperation Fund (collectively referred to herein as "Trust Funds"), and Painters and Allied Trades District Council No. 36 on behalf of the Resilient Floor and Decorative Covering Local Union 1247 (referred to herein as "Union;" collectively referred to herein as "Plaintiffs"), filed this action against defendant Lambard Enterprises, Inc., a California corporation ("Defendant") to collect delinquent trust fund contributions. Plaintiffs' complaint filed on October 21, 2010 contained two causes of action for breach of contract and on cause of action for violation of ERISA. On February 28, 2011, the court granted Plaintiffs' motion in its entirety, including all contributions, liquidated damages, accrued interest, working dues, and audit fees prayed for. The court further ordered Plaintiffs to file the instant motion for attorneys' fees and costs in excess of the default schedule of L.R. 55-3.

As evidenced in the Declaration of Joseph Ehrbar, the Trust Funds are employee welfare benefit and pension plans within the meaning of Section 3(1) and (2)(A) of ERISA, 29 U.S.C. §1002(1) and (2)(A), and are multiemployer plans within the meaning of Section 3 (37)(A) of ERISA, 29 U.S.C. §1002(37)(A). The Union is an employee organization within the meaning of Section 3(4) of ERISA, 29 U.S.C. §1002(4). Defendant Lambard Enterprises, Inc., a California corporation, is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5).

1

Plaintiffs seek an award of attorneys' fees in excess of the amount provided pursuant to the default schedule of L.R. 55-3. Specifically, Plaintiffs seek payment of all attorneys' fees incurred by the Trust Funds to collect Defendant's delinquent fringe benefit contributions, and attorneys' fees incurred in pursuing the instant case against Defendant, including, but not limited to filing the Amended Motion for Default Judgment.

## II. LEGAL AUTHORITIES

### A. Under ERISA Plaintiffs' are Entitled to Recover Attorneys' Fees Incurred in Pursuing this Action

When judgment is entered in favor of an ERISA plan in an action to enforce Section 1145 of ERISA, Section 502(g)(2) ERISA, 29 U.S.C. §1132(g)(2) requires courts to award the unpaid contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees and costs and "such other legal and equitable relief as the court deems appropriate." When an employer violates Section 515 of ERISA, 29 U.S.C. §1145 and an ERISA plan is entitled to judgment for the amount of unpaid contributions, the remedies provided under Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) are mandatory. *Operating Engineers Pension Trust v. Reed*, 726 F.2d 513, 514 (9th Cir. 1984); *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983).

### B. The Master Labor Agreement, Trust Agreements, Declarations of Trust and Trust Fund Collection Policies Provide for Recovery of Attorneys' Fees Associated with Attorneys' Fees Incurred to Collect Unpaid Contributions

On or about September 17, 2007, Defendant became signatory to the Master Labor Agreement as Amended Between Floor Covering Association of Southern California and Painters and Allied Trades District Council No. 36 of the International Union of Painters and Allied Trades, AFL-CIO-CLC on Behalf of Resilient Floor and Decorative Covering Local Union No. 1247 ("MLA"). [Declaration of Joseph Ehrbar "Ehrbar Decl.," ¶ 7, Exhibit 1.] As an employer bound to the MLA,

Defendant agreed to be bound to the Trust Agreements and Declarations of Trust, and the enforcement procedures established under the Trust Agreements and Declarations of Trust. [Ehrbar Decl., ¶ 8, Exhibit 1.]

The Trust Agreements, Declarations of Trust and Collection Policies of the Southern California Floor Covering Trust Funds require an employer to pay the Trust Funds' attorneys' fees incurred in collecting delinquent contributions. [Ehrbar Decl., ¶¶ 9 - Exhibits 2 through 7.] The Declarations of Trust of the Southern California Floor Covering Pension Trust Fund and the Health & Welfare Trust Fund provide, in pertinent part, "Employers delinquent in contributions shall pay . . . all costs, including actual attorney's fees and costs incurred by the Trustees or the Fund Administrator in collecting such contributions." [Ehrbar Decl., ¶¶ 9, 10, Exhibits 2 and 3.]

The Agreement and Declaration of Trust Providing for the Southern California Floor Covering Apprenticeship and Training Trust Fund Amended and Restated August 21, 2009, Article VII, Section 7.1 C, that notwithstanding that the Trust Fund is entitled to attorneys' fees for filing a lawsuit to collect delinquent contributions in accordance with Section 502(g) of ERISA, " . . . the Trustees have the power to take any action necessary to enforce the payment of contributions and other amounts due, which may include, but is not limited to, filing or intervening in any legal, equitable or administrative proceedings.  All reasonable expenses incurred by the Trust Fund to enforce the payment of amounts due, including but not limited to, reasonable attorneys' fees, accountants' or auditors' fees and court cost will be added to the amount owed by the delinquent employer in addition to the amount of contributions and payments due and liquidated damages and interest provided for above." [Ehrbar Decl., ¶ 11, Exhibit 4.]

The Trust Agreement and Declaration of Trust of the Southern California Floor Covering Vacation and Holiday Trust Fund, as Amended October 22, 1971 provides in Article III, Section 3, that "The collection of delinquent contributions or alleged

delinquent contributions shall be subject to the enforcement procedures of the Collective Bargaining Agreement." [Ehrbar Decl., ¶12, Exhibit 5.] The Trust Agreement Establishing the Contract Administration Trust Fund for Union Management Relations provides in Article VII, Section 7.3 (e) provides that, "A delinquent Employer shall pay all reasonable attorneys' fees, court costs and other expenses incurred in the collection of contributions from such Employer." [Ehrbar Decl., ¶ 13, Exhibit 6.]

Finally, the Audit and Collection Policies and Procedures for the Southern California Floor Covering Trust Funds Effective December 18, 2007 provides in Article III, Section (B) (3), "The Delinquent Employer shall pay the Funds' attorneys' fees and all costs of collection, including court costs, incurred by the Funds as a result of the delinquency." [Ehrbar Decl., ¶ 14 Exhibit 7.]

On March 15, 2009, Lambard entered into a Payment Agreement for payment of unpaid and delinquent contributions for the Months of May 2006 through February 2009 in the amount of $254,867.54 and liquidated damages in the amount of $139,403.25 ($394,270.79 total). The Payment Agreement provides that in the event of an uncured breach by Lambard, the Trust Funds may immediately institute legal action against Lambard for payment of the full amount due "plus accrued interest, additional delinquent contributions, and all other amounts owed or which may become due and owing to the Funds, including but not limited to interest, liquidated damages, costs and attorneys fees as allowed by the [Collective Bargaining Agreement] and ERISA, 29 U.S.C. §§ 1132 and 1145, for which the Employer shall be liable." [Ehrbar Decl., ¶ 15, Exhibit 8.]

Lambard defaulted on the terms of the Payment Agreement by failing to complete all payments due to the Trust Funds. Lambard also defaulted on the terms of the Payment Agreement, the MLA, the Declarations of Trust and Trust Agreements by failing to timely submit reports with payment, and by submitting late reports and reports without payment for the period of July 2006, September 2006 through

November 2007, February 2007 through November 2007, and February 2008 through September 2008, and by submitting reports without payment of contributions for the months of May and June 2007, September through December 2008, and May 2009 through February 2010, by failing to submit reports from March 2010 to date, and by failing to pay the audit balance due to the Trust Funds.[1] [Ehrbar Decl., ¶ 16.]

On February 28, 2011, this Court granted Plaintiffs Amended Motion for Default Judgment for $718,362.78 in contributions, $240,849.88 in liquidated damages, $66,378.68 in accrued interest (which continues to accrue until paid), $36,709.50 in working dues pursuant to audit, $12,337.50 in audit fees. Accordingly, pursuant to the MLA, Trust Agreements, Declarations of Trust and The Collection Policies of the Southern California Floor Covering Trust Funds, Plaintiffs are entitled to recovery of all attorneys' fees and costs incurred in pursuing collection of Defendant's delinquent contributions and in brining the instant litigation.

**C.  Attorneys' Fees Sought by Plaintiffs Were Incurred in Pursuit of Defendant's Delinquent Contributions and Default Judgment**

All attorneys' fees requested by Plaintiffs were incurred by the Trust Funds in pursuit of Defendants' delinquent contributions and pursuit of Default Judgment. In June 2009, after making only three (3) payments, failed to submit any further installment payments on the Payment Agreement, and in July and August 2009, Lambard submitted payments for May 2009 and June 2009 reports $45,781.96 and $22,628.14 that were returned due to insufficient funds. [Ehrbar Decl., ¶ 16.]

Plaintiffs began to incur attorneys' fees for professional services rendered by Wohlner Kaplon Phillips Young & Cutler on August 14, 2009, approximately two months after Defendant ceased making payments pursuant to the Payment Plan and approximately one month after Defendant began submitting bad checks to the Trust Funds. [Frontman Decl, ¶ 4, Exhibit 8.]

---

[1] The Payment Agreement also provided that Lambard was to pay the audit balance to the Trust Funds by no later than June 15, 2011. (Exhibit 8, Section 6.)

5

Examination of the billing records submitted by Plaintiffs for attorneys' fees include a considerable amount of time spent by Plaintiffs' counsel in resolving Defendant's delinquencies. In light of Defendant's continuing violation of ERISA, the CBA, and the Trust Agreements it was necessary for Plaintiffs' to engage the services of counsel to attempt to collect delinquent contributions.

The billing records reflect a considerable amount of time spent in resolving Defendant's delinquencies by way of negotiations and third party collections, including, but not limited to: (1) negotiations with Defendant; (2) correspondence to Defendant and counsel, (3) letters and calls to general contractors and awarding bodies requesting Defendant's certified payroll records, (4) calculating contributions and damages owed pursuant to certified payroll records, (5) calls to general contractors regarding contribution payments via joint checks, (6) filing stop notices, (7) filing payment bond and stop notice release bond claims and further correspondence with surety companies, (8) issuing conditional releases for joint check payments submitted by Defendant's prime contractors, (9) filing a claim against Defendant's license bond with the Contractors State License Board which necessitated Plaintiffs' participation in an Interpleader action filed by Defendant's surety, and (10) filing stop notice releases upon receipt of payment. [See Frontman Decl., ¶ 7, Exhibit 8.]

At the hearing on Plaintiffs' Motion for Default Judgment, the Court questioned whether time spent on drafting a motion for summary judgment prior to the hearing on the Motion of Defendant's attorney to withdraw as counsel was reasonable. Counsel reviewed the files and recalled drafting the motion to compel discovery responses and the motion for summary judgment in an effort to obtain job information and move quickly on summary judgment should the court deny the motion to withdraw. The motion to withdraw was granted, and Plaintiffs were not able to file the motions. However, counsel spent only 1 ½ hours on the draft summary judgment motion (at $307.50 in fees) and used the case summary in

Plaintiffs' Motion for Default Judgment. [Frontman Decl, ¶ 9.] Accordingly, attorneys' fees for the Motion for Summary Judgment were not unreasonable.

### D. Plaintiffs' Attorneys' Fees are Reasonable and Should be Granted

Once entitlement to attorneys' fees is established, the district court determines what fee is reasonable. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). Plaintiffs requested the court set the amount of attorney fees rather than relying on the schedule in Local Rule 55-3. Under the two-step hybrid lodestar/multiplier approach of *Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 945 (9th Cir. 2007), the court determines the lodestar figure calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." A party seeking attorneys fees must submit evidence showing that the rates and hours billed are reasonable and in line with those prevailing in the community for similar service. *TELUS Corp. v. Telus Communications, Inc.,* 2007 WL 3169131, 2 (C.D.Cal. 2007).

When awarding fees under ERISA, "the court must determine a 'lodestar' amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Operating Engineers' Pension Trust Fund v. Clark's Welding and Mach.* L 1729475, 5 -6 (N.D.Cal.,2010) (citing *Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident Ins. Co.,* 25 F.3d 743, 750 (9th Cir.1994)). Reasonable rates are determined by reference to the marketplace. *Id.* The determination of a reasonable hourly rate "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 946 (9th Cir.2007) (quoting *Davis v. City and County of San Francisco,* 976 F.2d 1536, 1545 (9th Cir.1992), vacated in part on other grounds, 984 F.2d 345 (1993)).

#### a. Hourly Rate

Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. See *Widrig v. Apfel,* 140 F.3d 1207,

1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 696 (9th Cir. 1996). A plaintiff must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895-96 (1984). Affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990). The relevant community is that in which the district court sits. See *Schwartz v. Secretary of Health and Human Servs.,* 73 F.3d 895, 906 (9th Cir. 1995).

Here, Plaintiffs' attorney fees ($205.00 per hour for partners and associates and paralegal fees at $95.00 per hour) are reasonable and may be granted in excess of the default schedule. Plaintiffs' counsel submitted that the rates paid by Plaintiffs in this action are reasonable within her experience in practicing in this area of law. [Frontman Decl, ¶¶ 3, 4.] Moreover, in 2007, the Ninth Circuit Held in 2007 that $250 is well below the prevailing market rate for ERISA plaintiffs' lawyers practicing in the Central District of California. *Welch,* supra 480 F.3d at 947. In *Board of Trustees of the San Diego Elec. Pension Trust v. Excellent Elec., Inc.,* no. 05cv1153 J (LSP), 2006 U.S. Dist. LEXIS 84518, *34 (S.D. Cal. Nov. 16, 2006) the court found that an hourly rate of $240 was reasonable for an attorney's work on an ERISA action. Accordingly, Plaintiffs' rate of $205 per hour is reasonable.

### B. Reasonable Hours

The Court may award attorney fees only if it concludes that the hours billed were reasonably expended in litigating the case and may exclude hours that are not reasonable expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwen,* 214 F.3d at 1045 (citing *Hensley,* 461 U.S. at 434 (holding that counsel for the prevailing party is expected to exercise good billing judgment and make a good faith effort to exclude hours that are excessive, redundant

8

or otherwise unnecessary). Here, counsel diligently pursued collection of delinquent contributions and was forced to file stop notices and bond claims in order to collect. [Frontman Decl., ¶ 7.] Plaintiffs were pursuing $718,362.78 in contributions and spent $55,100.06 in attorney and paralegal fees.

## III. CONCLUSION

Here, Plaintiffs properly pleaded that Defendant's are responsible for Plaintiffs' attorneys' fees under ERISA as well as attorneys' fees incurred in pursuing delinquent contributions pursuant to the Trust Agreements and the Collection Policy of the Trust Funds. (Complaint para. 10, 17, 20, 26, 31, 32.). Accordingly, Plaintiffs respectfully request that this Court grant Plaintiffs' attorneys' fees in the amount of **$55,100.06** and costs of **$5,857.80.**

Dated: March 4, 2011

Jeffrey Cutler
Elizabeth Rosenfeld
Sally S. Frontman, Esq.
WOHLNER KAPLON PHILLIPS
YOUNG & CUTLER


By ___/s/ Sally S. Frontman___
     Sally S. Frontman
Board of Trustees of the Southern California Floor Covering Pension Trust Fund, Southern California Floor Covering Health and Welfare Trust Fund, Southern California Floor Covering Apprenticeship and Training Trust Fund, Southern California Floor Covering Vacation and Holiday Trust Fund, Contract Administration Trust Fund, and the Painters and Allied Trades Labor Management Cooperation Fund